UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS S. CHABOT, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WALGREENS BOOTS ALLIANCE, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. Action No. 1:18-cv-02118-JEJ<br><br>CLASS ACTION<br><br>LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |

1530294_1

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................1

II.  THE COURT'S RELEVANT RULINGS IN THE *HERING* ACTION.........4

III. THE WALGREENS DEFENDANTS MAKE THE SAME
     ARGUMENTS AS THEY DID IN THE *HERING* ACTION ......................7

IV.  THE COMPLAINT (STILL) ADEQUATELY ALLEGES
     SCIENTER ...................................................................................9

     A.   Plaintiffs' Allegations Are Sufficient to Plead a Strong
          Inference of Scienter ...........................................................10

     B.   The Walgreens Defendants' Proffered Competing Inference
          Fails, Again ........................................................................12

     C.   The Walgreens Defendants' Proffered Inference that They Did
          Not Know Anything About the FTC Review Fails, Again.................15

     D.   The Walgreens Defendants Provide No Authority that Casts
          Doubt on the Court's Previous Finding of Scienter...........................18

V.   CONCLUSION.............................................................................21

1530294_1

# TABLE OF CONTENTS

**Page**

## CASES

*Denny v. Barber*,
  576 F.2d 465 (2d Cir. 1978) ...............................................................................18

*Hering v. Rite Aid Corp.*,
  331 F. Supp. 3d 412 (M.D. Pa. 2018).........................................................*passim*

*In re Sprint Corp. Sec. Litig.*,
  232 F. Supp. 2d 1193 (D. Kan. 2002)........................................................20, 21

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ...............................................................................18

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ......................................................................*passim*

*Makor Issues & Rights, Ltd. v. Tellabs*,
  513 F.3d 702 (7th Cir. 2008) ....................................................................*passim*

*Rankin v. Majikes*,
  No. 3:CV-14-699, 2014 WL 6893693
  (M.D. Pa. Dec. 5, 2014)....................................................................................14

*Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ...............................................................................18

*Rubinstein v. Gonzalez*,
  241 F. Supp. 3d 841 (N.D. Ill. 2017).................................................................20

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78t(a) ................................................................................................................21

1530294_1

## I.     INTRODUCTION

The complaint in this case re-alleges, in full, only those statements by the Walgreens Defendants that this Court found actionable in the related *Hering* Action.[1] The Court recognized that "in all practical ways, this case is identical to the *Hering* case, save for the new named Plaintiffs."  ECF No. 16.  Notably, the Walgreens Defendants declined to file a motion for reconsideration in the *Hering* Action.  They filed an Answer.  Now, however, the Walgreens Defendants effectively file a belated motion for reconsideration, yet identify no "change in controlling law," no "new evidence," and no "clear error of law," as would be required for a legitimate motion. They instead reiterate the same arguments, the same authorities, and the same legal theories, but nonetheless fail to identify any flaws in the Court's opinion upholding the same allegations.  Indeed, the Walgreens Defendants rely on ten cases; seven were previously relied upon in the *Hering* briefing and the three "new" cases stand for general propositions that are not in dispute.

As in the *Hering* case, this action alleges false and misleading misrepresentations made by Walgreens and its CEO (Stephano Pessina) and CFO (George R. Fairweather) from October 20, 2016 to June 28, 2017, in which they disputed media reports by stating, based on their insider knowledge, that the proposed

---

[1]     Unless otherwise indicated, all capitalized terms have the same meaning as in the Class Action Complaint for Violations of the Securities Exchange Act of 1934 (the "Complaint") (ECF No. 1).  "¶" and "¶¶" references are to the Complaint.

merger between Walgreens and Rite Aid would pass regulatory review.  When the truth came to light shortly thereafter, Rite Aid stock plummeted and investors were harmed.  The Walgreens Defendants do not now contest that the Complaint adequately alleges:  (a) that they each made materially false and misleading statements to the investing public, disputing contrary reports signaling regulatory turbulence ***and*** misrepresenting that their inside knowledge of the FTC process gave them confidence that the deal would close; (b) that their materially false statements are not protected by the PSLRA safe harbor; nor (c) that Rite Aid stock was improperly and artificially inflated as a direct result of their material misrepresentations to the investing public, harming Plaintiffs.

The Walgreens Defendants simply urge the Court to reconsider its ruling on scienter.  In support, they make the identical argument as before:  that the Complaint is "puzzling" because it does not explain why Walgreens executives would want to "inflate" Rite Aid stock.  *See* MTD Br. at 1, 11-12, 14-15.[2]  *Compare with Hering* MTD Br. at 2, 9, 12 (arguing that complaint is "confused" because of a purported "theory that statements . . . were made [by Walgreens] with the intend to deceive or

---

[2]      "MTD Br." references the Walgreen Defendants' Brief in Support of Defendants' Motion to Dismiss.  ECF No. 39.

1530294_1

defraud Rite Aid stockholders into buying Rite Aid common stock at artificially inflated prices").[3]  But Mr. Hering previously addressed that argument:

> [W]hile the motive to artificially inflate stock prices can provide scienter in some cases (*e.g.*, cases where defendants conduct insider stock sales), that is not Plaintiff's theory here.  In this case, scienter is based on the fact that Defendants knew or had access to facts contradicting the statements and omissions at issue.

*Hering* Pl. MTD Opp. at 52.[4]

After reviewing these arguments, in 179-pages of motion to dismiss briefing from both sides including 36 pages on scienter alone, the Court "holistically" ruled in a published opinion that "[s]center is satisfied by either knowledge *or* recklessness" and that "Plaintiff has pled sufficient facts to strongly infer that Walgreens was at least reckless in making statements that would mislead a reasonable investor about the level of regulatory risk."  *See Hering v. Rite Aid Corp.*, 331 F. Supp. 3d 412, 428 (M.D. Pa. 2018).  In sum, the Walgreens Defendants' arguments are without merit for the reasons explained in the Court's previous order and for the additional reasons described below.

---

[3]     "*Hering* MTD Br." references, from the *Hering* Action, The Walgreens Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint.  *Hering* Action ECF No. 98.

[4]     "*Hering* Pl. MTD Opp." references the Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaint. *Hering* Action ECF No. 106.

## II.   THE COURT'S RELEVANT RULINGS IN THE *HERING* ACTION

The Court's ruling in *Hering*, 331 F. Supp. 3d. 412, cannot be more directly on point.  During the Class Period, journalists and analysts expressed concerns about the Proposed Mergers' ability to pass regulatory review.  *Id*. at 419.  Specifically in response to these expressed concerns, the Walgreens Defendants made numerous statements "[d]ownplaying or disputing contrary reports from journalists signaling regulatory turbulence."  *Id.* at 426.  The Walgreens Defendants told investors that based on their "[i]nside knowledge" of non-public facts and based on active feedback from the FTC, they were confident that the deal would close.  *Id.*

On July 11, 2018, in an extensive and multifaceted analysis of several alleged misstatements, the Court determined that certain statements by the Walgreens Defendants were materially false and misleading:

> Starting October 20, 2016, the Walgreens Defendants began to express confidence that the deal would close and questioned newspaper reports of regulatory turbulence.  With these statements, Plaintiff's allegations have more merit.  At the time the statements were made, the end date for the original merger agreement already had been pushed back by three months.  In one instance, in April 5, 2017, the statement of confidence was made even after the merger agreement had been revised. Furthermore, Walgreens alluded to their "inside knowledge" of the FTC's review and their close collaboration with the FTC as a basis for dismissing contradictory reports from journalists.  The Walgreens Defendants also noted that their confidence in the deal closing had not changed since the beginning, despite the obvious effects of the FTC's concerns.

- 4 -

Because the Walgreens Defendants' statements directly questioned contradictory reports and purportedly were based on non-public information from the FTC, we find that a reasonable investor could have been misled into thinking that the review process was progressing better than it was. ***At a time when approval of the transaction may have been legitimately in doubt, the Walgreens Defendants' statements alluded to secret knowledge that created a false sense of security***. Therefore, with respect to these particular statements, we find that Plaintiff has satisfied the first element of a § 10(b) claim.

*Id*. at 427. The Court also ruled that the statements alleged as actionable in the current Complaint are not protected by the PSLRA safe harbor. *Id.* at 426.

After considering "the allegations as a whole," *id.* at 428, the Court holistically found that Mr. Hering's allegations were sufficient to plead that the Walgreens Defendants were at least reckless with respect to these statements:

**Scienter**

We will consider scienter only with respect to the statements that have been adequately pled as false or misleading. As noted earlier, Plaintiff must plead a "strong inference" of scienter.

It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as "strong" . . . we hold, an inference of scienter must be more than merely plausible or reasonable - it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

- 5 -

*Tellabs, Inc.*, 551 U.S. at 314.   As noted above, the Walgreens Defendants ventured into actionable territory when they openly contradicted news reports of regulatory trouble by alluding to their non-public "inside" knowledge of the FTC's review.  ***Plaintiff alleges that Walgreens, by the time of the statements, had ample reason to understand that the merger was in trouble***.  Indeed, once the FTC raised concerns and the original terms of the merger needed to be revised, one would expect the Walgreens Defendants to soften their aggressively confident stance.  Instead, the Walgreens Defendants seemed to double-down and disputed reports that the transaction may falter.

Scienter is satisfied by either knowledge or recklessness.  We do not know what the Walgreens Defendants knew or did not know based on their internal discussions with the FTC.  ***However, based on the allegations as a whole, we find a strong inference at least of recklessness***.  These statements were made in close proximity to both the revision of the merger agreement and the ultimate decision to terminate the merger.   Moreover, the statements were made specifically to counteract reports that the merger may not be approved, making them more than mere statements of corporate optimism.  ***There may be plausible alternative explanations, but at this early stage, we find that Plaintiff has pled sufficient facts to strongly infer that Walgreens was at least reckless in making statements that would mislead a reasonable investor about the level of regulatory risk***.

*Id*.

On October 24, 2018, because Mr. Hering had no purchases in the revised class period, the Court granted the Walgreens Defendants' motion for judgment on the pleadings.  *See Hering* Action, ECF No. 149.  When denying Plaintiffs' motion to intervene, the Court ruled that Plaintiffs' "interests remain unharmed by dismissal for lack of standing because they are free to bring their claims in a new action. . . .  The interests they would protect if permitted to intervene are the same interests they could protect in a separate action."  *Id.* at 13.

- 6 -

### III.   THE WALGREENS DEFENDANTS MAKE THE SAME ARGUMENTS AS THEY DID IN THE *HERING* ACTION

Plaintiffs filed this action on November 2, 2018 and "adopted and incorporated the allegations stated in the Amended Complaint filed in *Hering*." ECF No. 16. The Walgreens Defendants then sought clarification regarding their ability to file another motion to dismiss here. In that request, the Walgreens Defendants represented that they will not: "revisit[] the arguments [from the *Hering* Action]." ECF No. 34 at 2. They stated that they "certainly are not seeking to 'renew' or 'reconsider' anything from a prior, dismissed action. Rather, the motion to dismiss will address important and novel issues raised by the new complaint, that have not been previously presented to the Court . . . ." ECF No. 34 at 2. In response, the Court warned: "We would, of course, caution Defendants against revisiting issues we already decided; however, we accept Defendants' representation that they anticipate raising novel issues." ECF No. 35.

The Walgreens Defendants did not uphold their end of the bargain. The following chart catalogues, in order, each issue argued in the Walgreen Defendants' current brief, then identifies the page number where the identical argument appears in Walgreens' Opening Brief in the *Hering* Action, and again in Walgreens' earlier Reply Brief ("*Hering* MTD Rp. Br."). The far right column identifies where plaintiff responded to the arguments in the *Hering* Action. Where language below appears in

- 7 -

quotes, those exact same words or phrases were stated by Walgreens in **both** the

current brief and their brief in *Hering* Action.

| **Issue/Argument** | **Current MTD Br.** | *Hering* **MTD Br.** | *Hering* **MTD Rp.Br.** | *Hering* **Pltf. MTD Opp.** |
|---|---|---|---|---|
| No "motive" – "why" would Walgreens executives want to deceive Rite Aid stockholders in order to "inflate" (or "prop up") Rite Aid stock price? | 1, 11-12, 14-15 | 2, 9, 12 | 3 | 52-53 |
| No "strong inference of scienter" under *Tellabs*. | 2, 11-22 | 11-17 | 2-7 | 41-50 |
| The more plausible inference under *Tellabs* is that the Walgreens Defendants accurately and fully "kept [Walgreens] investors informed" of the FTC process in real time. | 2, 12-14 | 13, 15, 28-31 | 6-7, 8 | 52-53 |
| Scienter is not established because "[i]n every corporate transaction, the corporation and its officers have a desire to complete the transaction."<br><br>-Same quote, same cite to *GSC Partners*. | 15 | 13 | 3 | 49-50 |
| The allegation concerning Defendant Pessina's "strong deal-making reputation" "makes no sense." | 15 | 3, 13 | | 50 |
| The allegations of "recklessness" do not implicate "extreme departure from standards of ordinary care." | 16 | 17 n.10 | 6 | 45 |

- 8 -

| -Same quote, different case. | | | | |
|---|---|---|---|---|
| Disputing allegations that Walgreens executives had contradicting non-public information. | 17-19 | 14-15 | 4-5 | 43-46 |
| The Walgreens Defendants did not know what Rite Aid's counsel shared with the Rite Aid Board. | 19 | 16 | | 18 |
| "Temporal proximity … alone" is not enough. | 20-21 | 16 | | 48-49 |

In fact, the Walgreen Defendants' current "Question Involved" is just a restatement of issues previously addressed. The current "Question Involved" states: "Whether the Complaint alleges facts sufficient to draw a strong inference of fraud that is cogent as compelling as any nonculpable inference." MTD Br. at 9. The Walgreens Defendants' opening and reply briefs in the *Hering* Action also included multi-page sections entitled, "Plaintiff Fails to Plead a Strong Inference of Scienter." *Hering* Action, ECF Nos. 98, 108.

## IV.   THE COMPLAINT (STILL) ADEQUATELY ALLEGES SCIENTER

The Court's finding of a strong inference under *Tellabs* that the Walgreens Defendants were "at least reckless in making statements that would mislead a reasonable investor about the level of regulatory risk," *Hering*, F. Supp. 3d at 428, was, and is still, adequately supported.

- 9 -

A.    **Plaintiffs' Allegations Are Sufficient to Plead a Strong Inference of Scienter**

"Scienter is satisfied by either knowledge or recklessness." *Hering*, 331 F. Supp. 3d at 428. "[P]laintiffs' allegations of scienter 'need not be irrefutable, *i.e.*, of the "smoking-gun" genre.'" *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009). "Instead, [the Court's] inquiry is 'whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter.'" *Id.* The Court's "case specific" scienter analysis "will ultimately rest not on the presence or absence of certain types of allegations but on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter." *Id.*

The Walgreens Defendants (again) focus on the wrong standard. Plaintiffs are not required to plead a "strong inference" of motive. Rather, the "scienter standard requires plaintiffs to allege facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'" *Avaya*, F.3d at 267; *see also Hering*, 331 F. Supp. 3d at 428. While "motive and opportunity" allegations once constituted an independent means of establishing scienter, that is "no longer tenable in light of *Tellabs*." *Avaya*, 564 F.3d at 276-77 ("a general rule that motive allegations are sufficient – or necessary – is unsound").

The Third Circuit in *Avaya* therefore held that the "most powerful evidence of scienter" was not "motive," but was "the content and context of [Defendants']

- 10 -

statements themselves." *Avaya*, 564 F.3d at 269.  In that case, the Court found that plaintiffs adequately alleged scienter for the company's CFO where: "[The CFO] did not simply make statements inconsistent with the existence of widespread and unusual discounting; he explicitly denied the existence of such discounting in response to repeated questions about pricing by analysts." *Id.*

So too here, the Walgreens Defendants held themselves out as having inside knowledge based on nonpublic data and communications with the FTC, used strong language expressing confidence, certainty, and clarity.  ¶¶51, 56-57, 60, 62. Defendants repeatedly made statements "***specifically*** to counteract reports that the merger may not be approved." *Hering*, 331 F. Supp. 3d at 428.  *Compare with Avaya*, 564 F.3d at 270 ("Given the specificity and repetition of the analysts' questions, [the defendant's] position as Chief Financial Officer, and the alleged state of Avaya's business at the time the questions were asked, there is a strong inference that [the CFO's] behavior reached this threshold of recklessness.").

Under these circumstances, and consistent with authority in the Third Circuit and in other jurisdictions, "Plaintiff has pled sufficient facts to strongly infer that Walgreens was at least reckless in making statements that would mislead a reasonable

1530294_1

investor about the level of regulatory risk" under *Tellabs* and *Avaya*. *Hering*, 331 F. Supp. 3d at 428.[5]

### B.   The Walgreens Defendants' Proffered Competing Inference Fails, Again

In their latest Motion, the Walgreens Defendants offer the ***same competing inference*** as before.   They assert that they actually believed the truth of their statements and timely disclosed information concerning necessary revisions to the deal "in real time."  MTD Br. at 12-14.  *Compare also id.* at 3 (contending that the more compelling inference was that they "believed – based on what they knew – that regulatory approval was obtainable and the news reports were inaccurate" and "updated investors" along the way); *with Hering* MTD Br. at 16, 17 ("In reality, the Walgreens Defendants limited their comments to Walgreens's evolving expectations about the deal and kept investors informed of the additional demands coming from the FTC."; "The Walgreens Defendants' statements were truthful when made and were revised as they became aware that circumstances changed.").   This competing inference fails for at least five reasons.

---

[5]     The Walgreens Defendants contend that the scienter analysis is somehow altered because the Rite Aid Defendants are now dismissed.  MTD Br. at 20.  That argument, however, ignores the structure of the *Hering* ruling, which addressed the claims against the Walgreens Defendants ***after*** concluding that Mr. Hering had not pleaded a claim against the Rite Aid Defendants.

**First**, the *Hering* Court ruled that the statements on October 20, 2016; November 17, 2016; December 20, 2016; January 5, 2017; and April 15, 2017 were materially misleading. *See Hering*, 331 F. Supp. 3d at 428. The Walgreens Defendants do not dispute that holding. MTD Br. at 9. Thus, the Walgreen Defendants' purported inference – that the actionable statements were actually true – seeks a backdoor reversal of the Court's published ruling with no new argument in support.

**Second**, the Walgreens Defendants present no evidence that this competing inference was left unconsidered by the Court even though presented in the previous briefing. To the contrary, the Court in fact explicitly referenced much of what the Walgreen Defendants now claim are exculpatory statements. *Compare* MTD Br. at 12-13 *with Hering*, 331 F. Supp. 3d at 417, 426 (describing December 10, 2015 "second request for information"; considering statements made in October and November 2016, as well as January and April 2017).

**Third**, the Walgreens Defendants argue that the "pleaded facts" support their "simple, more compelling, and benign inference" – but they do not actually cite to the Complaint in support of their inference. Rather, they assert as true self-serving facts manufactured out of thin air. For example, the Walgreen Defendants claim that they disputed news reports "because they believed the reports were inaccurate" (unsupported) and that Defendant Pessina "was answering an analyst's question

- 13 -

truthfully" (also unsupported).  *See* MTD Br. at 13.  The Walgreens Defendants then attach a series of exhibits, but "if judicial notice is taken of these documents, 'a court may take notice of such documents only to establish their existence and legal effect, or to determine what statements they contained . . . ***not for the truth of the matters asserted***." *Rankin v. Majikes*, No. 3:CV-14-699, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014).  Simply because the Walgreens Defendants issued different statements does not mean that they are all considered true at the pleading stage.  *Id.*

*Fourth*, even if the Court were to accept the Walgreen Defendants' exhibits for their truth, these exhibits do not establish what the Walgreen Defendants say they do. *See* MTD Br. at 12-14.  For example, Exhibits 1 and 3 are excerpts of Walgreens 2015 and 2016 10-K in which Walgreens issued general, broad cautionary language that they could not guarantee that the Merger would be completed. *See* Ex. 1 at 9; Ex. 3 at 11.  This does not cleanse misleading statements months later.  *See, e.g.*, *Hering*, F. Supp. 3d at 423-24.  In addition, none of these disclosures support an inference that the Walgreen Defendants were providing accurate and timely information "all along." MTD Br. at 13.  To the contrary, on June 29, 2017, upon the news of the termination of the Revised Merger, Rite Aid's stock dropped by over 26% to close at $2.89 per share. ¶66. Rite Aid also publicly conceded that its stock traded at artificially inflated levels precisely because of "market expectations of the likelihood that the merger would occur on the terms of the original merger agreement" ¶¶67-70, 89.  The

- 14 -

market's misperception was specifically fueled by the Walgreens Defendants' misleading statements at issue here. *Id.*

*Fifth*, the Walgreens Defendants' argument – that it is essentially more plausible that they were being fed false information and simply repeating it to the public – has been repeatedly rejected. *See, e.g.*, *Avaya*, 564 F.3d at 269; *Makor Issues & Rights, Ltd. v. Tellabs*, 513 F.3d 702, 711 (7th Cir. 2008) (finding scienter adequately alleged and stating, "[i]s it conceivable that he was unaware of the problems of his company's two major products and merely repeating lies fed to him by other executives of the company?  It is conceivable, yes, but it is exceedingly unlikely").[6]

### C.   The Walgreens Defendants' Proffered Inference that They Did Not Know Anything About the FTC Review Fails, Again

The Walgreen Defendants again argue, based on a purported unawareness of the ongoing FTC process, that the Complaint does not plead sufficient facts to strongly infer that they were at least reckless in making the misleading statements.  MTD Br. at

---

[6]      Despite the Walgreens Defendants' argument to the contrary (MTD Br. at 22), the Court's ruling is temporally correct that "once the FTC raised concerns and the original terms of the merger needed to be revised . . . the Walgreens Defendants seemed to double-down and disputed reports that the transaction may falter." *Hering*, 331 F. Supp. 3d at 428.  The FTC raised concerns well before the parties finally announced the Revised Merger Agreement on January 30, 2017. *See, e.g.*, ¶63. Moreover, Pessina in fact double-downed and disputed reports on the April 5, 2017 call.  ¶62 (disputing analyst question that companies and the FTC were not "seeing eye to eye").

- 15 -

16-19.  Put simply, the Walgreens Defendants' competing inference is not persuasive "as a matter of practical judgment" when considering the "whole factual picture." *See Avaya*, 564 F.3d at 269; *see also Hering*, 331 F. Supp. 3d at 428 (considering "the allegations as a whole").

Here, Plaintiffs' allegations in total demonstrate that Defendants were actively and regularly in communications with the FTC.  *See, e.g.*, ¶¶48, 50, 58-59, 62.  Thus, to accept the Walgreens Defendants' inference that they in fact **correctly** disputed news reports from October 2016 through April 2017 (MTD Br. at 16-19), it would also have to be true that the FTC did not hint to any potential issues, and surprised the Walgreens Defendants with the truth at the last minute.  That, as previously explained, is more implausible, contradicted by the allegations, and wholly lacking in any support from the factual allegations (or Defendants' exhibits).  *See Hering*, 331 F. Supp. 3d at 428.

The Complaint also alleges with very specific factual detail that the Walgreens Defendants at least recklessly created the impression of a state of affairs that materially differed from reality.  On January 5, 2017, for example, Defendant Pessina disputed analysts and assured that closing was certain based on secret information.  ¶¶59-60.  Yet, Rite Aid would later disclose in the 2017 Proxy that the very next day, January 6, 2017 – based on information known to the Walgreens Defendants – Rite Aid deal counsel had already concluded the **exact opposite**.  ¶63(b).  It is thus

- 16 -

abundantly clear that: (a) Walgreens and Pessina's statements were contemporaneously false; and (b) Walgreens and Pessina had information in their possession directly contradicting their statement.  ¶¶60, 63(b).

Using practically identical language as before, the Walgreens Defendants request dismissal of these allegations based on an unsupported inference that Rite Aid kept its discussions with the FTC secret from Walgreens.  *Compare* MTD Br. 19 ("Obviously, whatever statements *Rite Aid's* lawyers may have made to *Rite Aid's* board have no bearing on what *Walgreens* executives knew") (emphasis in original); *with Hering* MTD Br. 16 n.9 ("Further, it is unreasonable to impute knowledge to the *Walgreens* Defendants based on comments *Rite Aid's* counsel shared with *Rite Aid's* board") (emphasis in original).  That inference fails.

The Walgreens Defendants repeatedly held themselves out as knowledgeable and as working with Rite Aid in lockstep regarding the FTC review.  ¶¶51, 56, 58-59, 77-80.  Pessina touted secret insider knowledge and stated that "we are actively engaged in discussions with the FTC."  ¶¶51, 58.  Fairweather described working with the FTC "in a very collaborative manner."  ¶56.  On December 20, 2016, Walgreens and Rite Aid issue a joint press release stating that Walgreens is "actively engaged in discussions with the FTC regarding the transaction. . . ."  ¶58.  In fact, Walgreens had contractual rights to "lead all discussions, negotiations, and other proceedings, and coordinate all activities" with the FTC.  ¶78.

- 17 -

The Walgreens Defendants' contrary inferences – that Rite Aid had unilateral discussions with the FTC and/or that Walgreens had no absolutely access to the information underlying Rite Aid counsel's (accurate) conclusions – are simply untenable given the Walgreens Defendants' own statements.[7]

### D.    The Walgreens Defendants Provide No Authority that Casts Doubt on the Court's Previous Finding of Scienter

In their Motion, the Walgreens Defendants provide no new authority that warrants revisiting the Court's prior ruling.  Out of ten cited cases, the only three "new" cases in the Motion are *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp*., 394 F.3d 126 (3d Cir. 2004); *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978); and *In re Suprema Specialties, Inc. Sec. Litig*., 438 F.3d 256 (3d Cir. 2006).  The Walgreens Defendants cite these cases for broad and undisputed propositions and without case-specific analysis.[8]

---

[7]      The reason that Rite Aid's 2017 Proxy describes Rite Aid's internal conclusions rather than Walgreens' is because it was drafted and filed by Rite Aid.  Walgreens, as the acquiror, did not issue a proxy for the Proposed Mergers.  The Walgreens Defendants thus implicitly ask for the highly improbable inference that their own counsel had not already concluded the same thing, despite the parties' constant communication and access to the exact same information.

[8]      For example, contrary to the Walgreen Defendants' suggestion, *Chubb* does not stand for the proposition that internal documents and confidential witnesses are the ***only*** way to adequately plead scienter.  *Cf. Avaya*, 564 F.3d at 269 (pointing to "array of circumstantial evidence giving rise to strong inference").

Unable to cite any new substantive authority in support, the Walgreen Defendants' Motion is left to rely on improper factual disputes. *See Avaya*, 564 F.3d at 260 ("we do not resolve factual disputes – even in cases governed by the PSLRA"). For instance, Defendants argue that it just could not be that Pessina wanted to maintain his deal-making reputation, because if the deal failed, his reputation would be harmed even more. MTD Br. at 15. But that is always an argument that any defendant can make in any securities fraud case, *i.e.*, it will be more harmful when the truth is finally exposed. And in that same passage, the Complaint alleges that the Walgreen Defendants "continued to mislead investors in order to rebut criticisms of the deal's viability," ¶74, which is an allegation supported in *Hering*, 331 F. Supp. 2d at 428 and *Avaya*, 564 F.3d at 269.

Moreover, the Third Circuit rejected the same tactic in *Avaya*. In *Avaya*, the defendants "primary strategy" to counter the plaintiffs' scienter allegations was to "focus on particular types of allegations and argue for the insufficiency of each." *Avaya*, 564 F.3d at 272. The *Avaya* defendants downplayed each until – exactly like the Walgreens Defendants here – they argued that the only allegations left were temporal proximity allegations, and "'temporal proximity alone is never enough to show scienter.'" *Id*.; *cf.* MTD Br. at 20. The Third Circuit rejected the defendants' arguments. "Whatever the merits of this approach before *Tellabs*, it is in tension with the prescriptions issued in that case," the Court explained. *Avaya*, 564 F.3d at 272.

- 19 -

"We are to judge 'whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *Id.*

Finally, while the Court's prior ruling in *Hering* contained ample supported authority, the Walgreens Defendants do not attempt to dispute the cases cited by Mr. Hering, two of which remain particularly apt. In *Rubinstein v. Gonzalez*, 241 F. Supp. 3d 841, 856 (N.D. Ill. 2017), the Court found a "strong inference" of recklessness when ruling:

> This suggests that . . . [the defendant] knew that there were public concerns that the merger would be called off due to the Notice, and calls into question whether he expressed his support for the merger not because [the acquiror] was actually still "more energized" or "more confident" about it than ever . . . but instead to appease worried [company] employees.

> Taken together, these facts satisfy Plaintiffs' obligation to include in their complaint strong circumstantial evidence that [the defendant's] September 29 statement was made with a reckless disregard for the known or obvious danger of misleading buyers into believing that [the acquiror] still fully intended to go forward with the merger when, in fact, [the acquiror] was in the process of analyzing whether to walk away from the deal in light of the tax rule change.

*Id.* Similarly, in *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1226 (D. Kan. 2002), the court also found a strong inference of recklessness in the same scenario: "the question is not whether the Sprint defendants knew that the merger ultimately would be blocked; rather, the question is whether the Sprint defendants knew that the nondisclosure of certain information, coupled with [previous] optimistic statement that

- 20 -

the merger would go through, would mislead its shareholders." *Id.*  The same reasoning applies here.[9]

## V.    CONCLUSION

For the reasons discussed above, in the *Hering* briefing, and the published *Hering* ruling, the Walgreens Defendants' Motion should be denied.

DATED:  February 7, 2019              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
DAVID T. WISSBROECKER
DAVID A. KNOTTS
EUN JIN LEE


                                                    s/ David A. Knotts
                                         DAVID A. KNOTTS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

---

[9]    The §20(a) claim against Pessina and Fairweather should proceed as well. *Hering*, 331 F. Supp. 3d. at 428 n.5.

- 21 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK J. DEARMAN
CHRISTOPHER GOLD
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Counsel for Plaintiffs*

KAUFMAN, COREN & RESS, P.C.
DEBORAH R. GROSS
(Pa. ID No. 44542)
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone:  215/735-8700
dgross@kcr-law.com

*Local Counsel*

- 22 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on February 7, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Knotts
DAVID A. KNOTTS

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: dknotts@rgrdlaw.com

1530294_1

# Mailing Information for a Case 1:18-cv-02118-JEJ Chabot et al v. Walgreens Boots Alliance, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Randall J Baron**
  randyb@rgrdlaw.com,jaimem@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas G. Collins**
  thomas.collins@bipc.com,cynthia.ziegler@bipc.com

- **Stuart A Davidson**
  sdavidson@rgrdlaw.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Christopher Chagas Gold**
  cgold@rgrdlaw.com,4703056420@filings.docketbird.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Deborah R Gross**
  dgross@kcr-law.com,jhannigan@kcr-law.com

- **Howard J. Kaufman**
  hkaufman@kcr-law.com,jhannigan@kcr-law.com

- **David A Knotts**
  dknotts@rgrdlaw.com,jaimem@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Eun J Lee**
  elee@rgrdlaw.com,3542483420@filings.docketbird.com,jaimem@rgrdlaw.com

- **Jonathan D Polkes**
  jonathan.polkes@weil.com,mco.ecf@weil.com,walgreens.associates@weil.com,nymao@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)