**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Douglas S. CHABOT *et al.*, | : | |
| | : | 1:18-cv-2118 |
| Plaintiffs, | : | |
| | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| WALGREENS BOOTS ALLIANCE, INC., *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM AND ORDER</u>**

**April 15, 2019**

Presently before the court is a Motion to Dismiss filed by Defendants Walgreens Boots Alliance, Inc., Stefano Pessina, and George R. Fairweather (collectively, "Defendants"). (Doc. 36). Defendants seek to dismiss the Complaint filed by Plaintiffs Douglas S. Chabot, Corey M. Dayton, and Joel M. Kling (collectively, "Plaintiffs"). (Doc. 1). For the reasons that follow, we will deny Defendants' motion.

## I. INTRODUCTION

This matter comes to us following our dismissal of a related case, *Hering v. Rite AID Corporation*, 1:15-cv-2440. In *Hering*, a Rite Aid shareholder, Jerry Hering, brought suit pursuant to the Private Securities Litigation Reform Act

("PSLRA"), claiming that numerous statements made by both Rite Aid and Walgreens officials during a failed effort to merge the companies were fraudulent or misleading in violation of §§ 10(b) and 20(a) of the 1934 Securities and Exchange Act ("1934 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as well as Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. On a motion to dismiss, we whittled the actionable statements down to a mere handful of statements made by Walgreens executives during earnings calls. Consequently, Hering lost standing because his last purchase of Rite Aid stock occurred prior to the allegedly misleading statements. Walgreens filed a motion for judgment on the pleadings based on Hering's lack of standing, and the plaintiffs in the present matter sought to intervene as new plaintiffs. We granted Walgreens's motion, denied the motion to intervene, and dismissed the action as moot. However, we noted that Plaintiffs were free to bring a separate action under the same facts, which is, of course, the case presently before us. Thus, the matter before us is functionally identical to *Hering* and based on the same set of facts.

As noted, this action is based on those few statements in *Hering* that we found actionable, specifically:

> [S]tatements downplaying or disputing contrary reports from journalists that the review was not going well, made on October 20, 2016, and November 17, 2016, as well as statements expressing confidence based on "inside" knowledge of the review, made on October 20, 2016, November 17, 2016, January 5, 2017, and April 5, 2017.

(*Hering v. Rite AID Corporation*, Doc. 111 at 29, n.4). Plaintiffs allege that these statements are false or misleading in violation of §§ 10(b) and 20(a) of the 1934 Act, as well as SEC Rule 10b-5. (Doc. 1, ¶ 2).

Defendants then filed a Motion to Dismiss on December 26, 2018 and a brief in support on January 8, 2019. (Docs. 36, 39). Plaintiffs filed their brief in opposition on February 7, 2019. (Doc. 48). On February 27, 2019, Defendants filed their brief in response. (Doc. 49). Having been fully briefed, the matter is ripe for disposition. For the reasons that follow, we will deny Defendants' motion.

**II. STANDARD OF REVIEW**

In deciding a motion to dismiss under Rule 12(b)(6), "a court must 'accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.'" *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 489 (3d Cir. 2016) (quoting *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007)). In a typical Rule 12(b)(6) analysis, "it is sufficient to plead facts that do no more than raise an allegation to the level of plausibly warranting relief." *Id.* at 490 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In securities fraud actions, however, "plaintiffs must 'satisfy the heightened pleading rules codified in' the PSLRA." *Id.* (quoting *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)).

The PSLRA requires a plaintiff's complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* (quoting 564 F.3d at 276). "This standard 'requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story.'" *Id.* (quoting 564 F.3d at 253). The complaint "must also 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' U.S.C. § 78u-4(b)(2)(A), specifically 'scienter,' which is defined in this context as a 'knowing or reckless' mental state 'embracing intent to deceive, manipulate, or defraud.'" *Id.* (quoting 564 F.3d at 252).

As previously mentioned, Plaintiffs here allege violations of §§ 10(b) and 20(a) of the 1934 Act, as well as Rule 10b-5 promulgated by the SEC. The United States Supreme Court has "prescribed a three-step process for considering a motion to dismiss in a § 10(b) action." *Id.* (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007))). "First, as with all motions under Rule 12(b)(6), we must 'accept all factual allegations in the complaint as true.'" *Id.* (quoting 551 U.S. at 322). "Second, we 'must consider the complaint in its entirety, as well as other

sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting 551 U.S. at 322). Finally, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.* (quoting 551 U.S. at 323). "Only a complaint that provides sufficiently particularized factual pleading and gives rise to a strong inference of scienter can survive a motion to dismiss." *Id.*

## III. DISCUSSION

Defendants support their motion with one argument: Plaintiffs' Complaint does not satisfy the PSLRA's scienter requirement. (Doc. 39 at 11–22). We necessarily considered this requirement in *Hering* for the statements at issue here. Our opinion in *Hering*, however, did not fully explain our reasoning for finding scienter. Thus, although Defendants' argument appears to merely relitigate an issue we already decided, which we expressly instructed them not to do, we nevertheless will take this opportunity to fully set forth our reasoning.

Scienter is a "'knowing or reckless' mental state 'embracing intent to deceive, manipulate, or defraud.'" *OFI Asset Mgmt.*, 834 F.3d at 490 (quoting 564 F.3d at 252). In *Tellabs, Inc.*, the Supreme Court articulated the following test to determine whether a plaintiff has adequately plead scienter:

> It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as "strong" . . . we hold, an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

*Tellabs, Inc.*, 551 U.S. at 314. Thus, the scienter inquiry requires us to determine Defendants' intent as to their actionable statements. We must make this determination by examining Plaintiffs' allegations and weighing the inference of fraudulent intent against competing inferences.

**A. The Inference of Fraudulent Intent**

Plaintiffs allege that Defendants' actionable statements were "false and misleading . . . concerning the level of regulatory risk faced by the Original Merger and the Revised Merger." (Doc. 1, ¶ 4). That is, Defendants expressed confidence that the Federal Trade Commission ("FTC") would approve the merger despite indicators to the contrary. (*See id.*).

On October 20, 2016, Walgreens and Rite Aid jointly announced that they were pushing back their Original Merger Agreement's end date by three months. (*Id.* at ¶ 50). Despite this setback, Defendant Pessina went on to express unwavering confidence that the merger would pass FTC review under the terms of

the Original Merger Agreement. (*Id.* at ¶ 51). He disputed skeptical news reports, questioning their sources and implying that Defendants had access to inside information. (*Id.*).

On November 17, 2016, at the Jefferies Healthcare Conference, Defendant Fairweather made assurances that the FTC would approve the merger. (*Id.* at ¶ 56). He admitted the process was taking longer than expected but took issue with the way it had been reported in the news. (*Id.*). On the same day, Gerald Gradwell, Walgreens's Senior Vice President, asserted that Defendants knew what they had to do to pass FTC review. (*Id.* at ¶ 57). Defendants' "clarity" was based at least in part on discussions they had with the FTC. (*Id.* at ¶ 57, 84). Mr. Gradwell again implied that Defendants had access to inside information from the FTC when he denied that the agency had any "blocking rationale." (*Id.* at ¶ 84).

On a January 5, 2017 earnings call, Defendant Pessina reiterated that the merger would prevail. (*Id.* at ¶ 59–60). He also denied that Walgreens had a "Plan B" in case the FTC ultimately did not approve the merger. A backup plan was unnecessary, Defendant Pessina maintained, because Walgreens had a "very good relationship with the people of the FTC." (*Id.* ¶ 60).

On January 30, 2017, Walgreens and Rite Aid announced that they were revising their Original Merger Agreement. (*Id.* at ¶ 61). Whereas the Original Agreement provided that Walgreens would acquire Rite Aid for $9.00 per share,

that price dropped to between $6.50 and $7.00 per share under the terms of the Revised Merger Agreement. (*Id.*). The companies also announced that they were pushing back the merger's deadline again, this time to July 31, 2017. (*Id.*).

On April 5, 2017, during another earnings call, Defendant Pessina conveyed a renewed confidence in the merger's success given the revisions that had been made. (*Id.* at ¶ 62). When an analyst on the call noted points of apparent disagreement between Defendants and the FTC, Defendant Pessina denied that characterization. (*Id.*).

In addition to the statements themselves, Plaintiffs allege that Defendants knew or recklessly disregarded facts that rendered their statements false or materially misleading. (*Id.* at ¶ 63). Plaintiffs allege, for example, that the FTC informed Defendants that their planned divestiture was anticompetitive, which would delay or perhaps doom the merger. (*Id.*). More bluntly, Plaintiffs allege that "each Defendant was fully informed of . . . the FTC's determination that it was unlikely to approve the Original Merger or the Revised Merger as then-constituted." (*Id.* at ¶ 80). Thus, according to Plaintiffs, Defendants knew or should have known that FTC approval was unlikely but consistently denied that they were having issues with the FTC. (*Id.*). And even when Defendants faced scrutiny from the press or were forced to modify the merger's terms, they continued to insist that the merger would prevail. Accordingly, Plaintiffs have

plausibly alleged that Defendants were "at least reckless in making statements that would mislead a reasonable investor about the level of regulatory risk." (*Hering*, Doc. 111 at 31).

**B. Competing Inferences**

Having found that Plaintiffs' allegations permit a plausible inference of recklessness, we must now determine if this inference is at least as compelling as opposing inferences of nonfraudulent intent. The most plausible alternative inference is that Defendants genuinely believed, albeit with cautious confidence, that their statements were accurate.[1]

On October 20, 2016, and January 5, 2017, for instance, Defendant Pessina stated that his confidence was based on his experience working with the FTC. (Doc. 39 at 5, 13). Similarly, at the November 17, 2016 conference, Mr. Gradwell denied that there was a "blocking rationale" at the FTC, (*id.* at 6), and reasoned that the FTC would have stopped working on the merger if a blocking rationale existed. (*Id.*). Furthermore, Defendants' cautionary language—for example, that it was impossible to guarantee the merger's success, (*id.*), that FTC reviews take time, (*id.* at 5), or that the FTC could ultimately reject the merger, (*see id.* at 7)— could plausibly support an inference that they were cautiously confident but not

[1] Defendants, in fact, present this as a more compelling inference in their supporting brief, though it was not their burden to generate a plausible alternative inference.

intending to misrepresent the facts to defraud investors. However, such cautionary language also permits an inference that Defendants knew their statements were misleading.

Thus, at this initial stage in the proceedings, we find that Plaintiffs' allegations support an inference of fraudulent intent that is at least as compelling as any competing inference. Defendants repeatedly insisted that the merger would pass regulatory review, while actively contradicting reports to the contrary. Moreover, Defendants continued to hold the line despite having to revise the Original Merger Agreement's terms and adjust the merger's timeline. Defendants refused to acknowledge that the merger was rapidly becoming less probable. And in the end, the merger was terminated, which was the logical consequence of its downward trajectory.

Plaintiffs also have made factual allegations suggesting Defendants knew or should have known of the merger's looming failure. Significantly, Plaintiffs allege that the FTC itself notified Defendants that approval was unlikely. Given what Defendants knew or should have known, we must again conclude that Defendants were at least reckless with respect to their actionable statements. Thus, Plaintiffs have plead a strong inference of scienter for purposes of the PSLRA and dismissal is inappropriate.

## IV. CONCLUSION

For the foregoing reasons, we shall deny Defendants' motion.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants Walgreens Boots Alliance, Inc., George R. Fairweather, and Stephano Pessina's Motion to Dismiss, (Doc. 36), is **DENIED**.
2. The parties shall jointly stipulate to a new trial term by filing a letter on the docket no later than **TEN (10) DAYS** from the date of this Order. A copy of the Court's trial calendar is attached for the parties' convenience.

s/ John E. Jones III
John E. Jones III
United States District Judge