## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS S. CHABOT, et al, | |
| Plaintiffs, | CIVIL ACTION NO. 1:18-CV-2118 |
| | CIVIL ACTION NO. 3:20-MC-00669 |
| v. | |
| | (JONES, C.J.) |
| WALGREENS BOOTS ALLIANCE, INC., et al, | (MEHALCHICK, M.J.) |
| Defendants. | |

## MEMORANDUM

This matter has been referred to the undersigned for purposes of resolving the discovery dispute raised by the parties regarding Weil, Gotshal & Manges's Motion to Quash the non-party subpoena issued by the Plaintiffs on November 20, 2020 (the Subpoena). This motion is filed under docket number 3:20-mc-00669 in this Court. *Weil, Gotshal & Manges LLP v. Chabot et al*, No. 3:20-mc-00669 (M.D. Pa. Dec. 10, 2020), ECF No. 1.[1] In the Subpoena, Plaintiffs request "[a]ll documents drafted by, received by, possessed by, or sent from" three Weil attorneys "concerning the FTC review of the Proposed Transactions."[2] (Doc. 167-1, at

---

[1] Despite the Motion to Quash ("the Motion") being filed to the docket of the miscellaneous court case, the Briefs in Support and Opposition can both be found on docket number 1:18-cv-2118. As such, the Court refers to the latter docket in referencing the arguments addressing the Motion.

[2] The "Proposed Transactions" include the Original Merger, Revised Merger, and/or any actual or contemplated divestiture of Rite Aid stores. (Doc. 167-1, at 6). The "Original Merger" is the merger agreement between Rite Aid and Walgreens jointly announced on October 27, 2015, pursuant to which Walgreens would acquire Rite Aid for $9.00 per share in cash. (Doc. 167-1, at 5). The "Revised Merger" is the revised merger agreement between Rite Aid and Walgreens announced on January 30, 2017, pursuant to which Rite Aid stockholders had their proposed consideration dropped from $9.00 per share in the Original Merger to between $6.50 to $7.00 per share. (Doc. 167-1, at 5).

12-13). Additionally, Plaintiffs seek all of Weil's communications with the FTC concerning Michael Moiseyev and the instant lawsuit from January 1, 2020, through the date of production. (Doc. 167-1, at 13).

Weil moves to quash the Subpoena on grounds of undue burden, relevance, and privilege. (Doc. 158-1). Weil first asserts that the material sought by Plaintiffs is not relevant to the claims and so Plaintiffs have no need for the documents demanded by the Subpoena. (Doc. 158-1, at 19-20). The only relevant communications are those directly exchanged between Weil and Walgreens executives, and these have already been produced. (Doc. 158-1, at 20-21). Material not sent to Walgreens cannot bear on the case and so are irrelevant to the matter, according to Weil. (Doc. 158-1, at 21).

Weil also contends that the information is largely privileged. (Doc. 158-1, at 22). As core work product, the documents fall outside the current scope of waiver and is protected from discovery. (Doc. 158-1, at 22). The waiver should not apply to any material not communicated to Walgreens because "these documents remain protected when a party places their knowledge at issue for the simple reason that they have no bearing on what the client knew." (Doc. 158-1, at 22).

Finally, Weil argues that production of the documents sought by the Plaintiffs would constitute an undue burden. (Doc. 158-1, at 22-26). The delay in issuing this Subpoena "until after the parties had effectively completed an extensive 18-month document discovery process and depositions were set to commence" would disrupt the case schedule and prolong the matter. (Doc. 158-1, at 22). Weil states that the Subpoena is "overbroad and unduly" and "calls for thousands of documents that have nothing to do with [Plaintiffs'] claims." (Doc. 158-1, at 23).

2

Plaintiffs respond that the Subpoena is timely because it was issued nearly four months before the close of fact discovery. (Doc. 166, at 12). Plaintiffs also contend that their requests are relevant because Weil is a key witness. (Doc. 166, at 23). Defendants are employing an "advice of counsel" defense and Weil's documents are relevant to Defendants' state of mind. (Doc. 166, at 23). The material could show that Defendants had access to information suggesting their public statements were inaccurate, according to Plaintiffs. (Doc. 166, at 24-25).

As to waiver of the work product doctrine, Plaintiffs first aver that the requested materials are not protected because Weil does not establish that they were prepared or obtained because of pending or threatened litigation. (Doc. 166, at 27). Furthermore, any protection is waived because of Defendants' decision to have Weil testify in the matter and because of Defendants' decision to assert an advice-of-counsel defense. (Doc. 166, at 28-29). Plaintiffs assert that fairness also compels the production of Weil's legal theories, opinions, and conclusions. (Doc. 166, at 29-30). If that material were inconsistent with the client's proffered opinion that is at issue, then it would support an inference that additional communications consistent with the work product material exist. (Doc. 166, at 31-32).

## I.   THE WORK PRODUCT DOCTRINE

The work product doctrine serves to "promote[] the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). The work product doctrine directly promotes the adversary system, whereas the attorney-

3

client privilege serves to directly promote the attorney-client relationship. *Westinghouse Elec. Corp*, 951 F.2d at 1428. The Supreme Court of the United States has said that the work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 & n. 11 (1975).

The doctrine applies to "documents and tangible things … prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)…" *In re Cendent Corp. Securities Litigation*, 343 F.3d 658, 662 (3d Cir. 2003) (quoting Fed. R. Civ. P. 26(b)(3)). Rule 26(b)(3) establishes two types of work product: first, general documents and tangible things that are prepared in anticipation of litigation, and second, work product that consists of "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation." *Cendent Corp*, 343 F.3d at 663 (quoting Fed. R. Civ. P. 26(b)(3)). The second type is referred to as "core" or "opinion" work product and "is discoverable only upon a showing of rare and exceptional circumstances." *Cendent Corp*, 343 F.3d at 663. "Opinion work product protection is not absolute, but requires a heightened showing of extraordinary circumstances." *Cendent Corp*, 343 F.3d at 664. The party seeking the protection of the work product doctrine has the burden of proving that the doctrine applies. *Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

## II.   DISCUSSION

### A.   RELEVANCE

Weil first asserts that the Subpoena does not satisfy the requirement that "the information sought is relevant and material to the allegations and claims at issue in the

4

proceedings." (Doc. 158-1, at 19-20) (quoting *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 475 (S.D.N.Y. 2016). This lawsuit addresses statements made by Walgreens executives about the FTC review process, and the executives are defending themselves by submitting that their statements reflected their genuine beliefs and the information they possessed at the time. (Doc. 158-1, at 20). "The only relevant law firm communications are those actually exchanged between Weil and [Walgreens] executives as those communications *could* potentially have influenced the speakers' state of mind and beliefs as to the likelihood that the FTC would approve the transaction." (Doc. 158-1, at 20). Any work product not communicated to Walgreens should be deemed irrelevant, according to Weil. (Doc. 158-1, at 20) (quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994). The communications between Walgreens and Weil have already been produced and since these are the only documents that could be relevant, the motion should be quashed. (Doc. 158-1, at 21).

Plaintiffs contend that the Subpoena complies with the discovery rules outlined by Rule 26(b)(1). (Doc. 166, at 22). Weil, as outside antitrust counsel to Walgreens and a liaison to the FTC, is a key witness in this matter. (Doc. 166, at 23). They aver that since Walgreens is employing an advice-of-counsel defense, Weil's internal files are discoverable as relevant to Defendants' state of mind. (Doc. 166, at 23).

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This rule provides a broad scope of discovery. *Johnson v. Miskell*, 2017 WL 3701784, at *3 (M.D. Pa. 2017). "Evidence is relevant if it has any tendency to make a consequential fact in an action more or less

probable." *In re Schaefer*, 331 F.R.D. 603, 607 (W.D. Pa. 2019). Information need not be admissible to be discoverable. *Schaefer*, 331 F.R.D. at 607.

Here, most of the information sought by Plaintiffs is clearly relevant. Plaintiffs request documents which concern the FTC review of the proposed transactions giving rise to this lawsuit. (Doc. 167-1, at 12-13). Any documents concerning the FTC review, whether they were transmitted between Weil and Walgreens, or whether they are opinion work product noting Weil's perceptions of the FTC assessment, are evidence which could make a consequential fact more or less probable. *See Schaefer*, 331 F.R.D. at 607. The truths and perceptions of the FTC review of the proposed transactions are integral to this matter. Any piece of information which addresses the review, including what was known or believed by Weil, Walgreens, or any other party to the proposed transactions, could shed light on what Defendants knew or believed. Even if the information was not communicated directly to Defendants, the thoughts of the attorneys who were in direct communication with the FTC could shed light on the actual status of the FTC review process and what was and was not communicated to Defendants. Therefore, such information has some "tendency to make a consequential fact … more or less probable." *See Schaefer*, 331 F.R.D. at 607.

Weil contends that *Rhone-Poulenc* established a "bright-line distinction" that when a defendant's state of mind is at issue, work product not shared with counsel is irrelevant. (Doc. 158-1, at 20). However, the Third Circuit made clear this is not the case. In *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995), the Third Circuit stated,

> [O]ur holding in [*Rhone-Poulenc*]—that a party does not lose the privilege to protect attorney-client communications from disclosure in discovery when his or her state of mind is placed at issue—was premised upon the unique facts of that case. In *Rhone-Poulenc*, advice of counsel was not raised as an affirmative

6

defense nor were there any acts evincing a clear intent to waive the attorney-client privilege by placing at issue reliance on the advice of counsel.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995)

The Third Circuit went on to hold that back-up documents possessed by the law firm and not communicated to the client, including internal research and other file memoranda, were discoverable, as "[a] review of these internal documents may lead to the discovery of admissible evidence regarding what information had been conveyed to Glenmede about the structure of the buy-back transaction and the advice of counsel in that regard." *Glenmede Trust Co.*, 56 F.3d at 487. Since Defendants in this action have put at issue the information they received from Weil, any documents possessed by Weil which concern the FTC review – whether opinion or fact, communicated to the client or not – are relevant to this lawsuit as material that could lead to admissible evidence regarding the Potential Mergers. *See Glenmede Trust Co.*, 56 F.3d at 487.

The request for communications between Weil and the FTC concerning Michael Moiseyev from January 1, 2020, to the date of production is more attenuated. (Doc. 167-1, at 13). Plaintiffs indicate that there could be a violation of Rule 1.11 of the Pennsylvania Rules of Professional Conduct at issue. (Doc. 166, at 40). They assert that in 2017 Moiseyev was employed by the FTC and "was an integral part of the FTC review" of the Proposed Transactions. (Doc. 166, at 40). Weil hired Moiseyev as a partner in April 2020, and Weil has refused to confirm the extent of Moiseyev's involvement in this matter. (Doc. 166, at 40).

Pennsylvania Rule of Professional Conduct 1.11 addresses conflicts of interest for former and current government officers and employees. Pa. R. Prof. Conduct 1.11. Specifically, Rule 1.11(a)(2) states that

7

> a lawyer who has formerly served as a public officer or employee of the government … shall not otherwise represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent to the representation.

Pa. R. Prof. Conduct 1.11(a)(2).

Moiseyev does not represent the Defendants in this matter, and Weil represents to the Court that "Weil attorneys working on this litigation have not discussed this matter with [Moiseyev]." As such, this request shall be quashed as irrelevant.

      B.    APPLICATION OF THE DOCTRINE AND THE ADVICE OF COUNSEL DEFENSE

Next, Weil contends that the requested information, as core work product, is afforded protection from discovery. (Doc. 158-1, at 22). Protection from such material is "almost absolute," and that protection has not been waived. (Doc. 158-1, at 22). According to Weil, mergers always bear the risk of potential litigation and so documents prepared for their purpose are protected. (Doc. 175, at 19-20). At no point did they affirmatively waive protection of core work product or any other work product that has not already been produced. (Doc. 175, at 21-26). Defendants have put at issue only that information which they possessed, and the communications between Defendants and Weil concerning the FTC review process have already been produced. (Doc. 175, at 22-23).

Plaintiffs aver that these documents were not prepared in anticipation of future litigation because Weil has not shown that "specific litigation was anticipated for the entire time period in which it seeks to withhold documents." (Doc. 166, at 27). As such, the work product doctrine is inapplicable. (Doc. 166, at 27). Furthermore, since Defendants asserted the advice of counsel – Weil being the counsel – as an essential element of its defense, work product immunity is waived as to the subject of that advice. (Doc. 166, at 29). Plaintiffs

proceed to cite cases which explain that when clients rely on the legal advice of counsel, then the door is opened for the other party to discover the entirety of counsel's legal opinions and memoranda on the subject. (Doc. 166, at 30-31) (citing *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 396 (D. Del. 2002); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307 (D. Del. 2000); *Harding v. Dana Transp.*, 914 F. Supp. 1084 (D.N.J. 1996)).

First, any material prepared for the purpose of the proposed merger falls under the "anticipation of future litigation" umbrella. *See Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 310 (D.N.J. 2008) ("The weight of case law suggests that, as a general matter, privileged information exchanged during a merger between two unaffiliated business[es] would fall within the common-interest doctrine.") (quoting *Cavallaro v. United States*, 153 F. Supp. 2d 52, 61 (D. Mass. 2001)). The Court of Appeals for the District of Columbia Circuit explained the dangers of not classifying the instant situation as one which is in anticipation of future litigation:

> [A]sked by a client to evaluate the antitrust implications of a proposed merger and advised that no specific claim had yet surfaced, a lawyer knowing that work product is unprotected would not likely risk preparing an internal legal memorandum assessing the merger's weaknesses, jotting down on a yellow legal pad possible areas of vulnerability, or sending a note to a partner—"After reviewing the proposed merger, I think it's O.K., although I'm a little worried about … What are your views?" Nor would the partner respond in writing, "I disagree. This merger is vulnerable because …" Discouraging lawyers from engaging in the writing, note-taking, and communications so critical to effective legal thinking would, in *Hickman's* words, "demoraliz[e]" the legal profession, and "the interests of the clients and the cause of justice would be poorly served."

> *In re Sealed Case*, 146 F.3d 881, 886-87 (D.C. Cir. 1998) (quoting *Hickman v. Taylor*, 329, U.S. 495, 511 (1947).

As illustrated by this passage, material prepared in anticipation of a potential merger is material prepared in anticipation of litigation. The material prepared by Weil relating to the

FTC review of the Proposed Transactions is certainly "prepared in anticipation of litigation." *See Sealed Case*, 146 F.3d at 886-87. As such, the work product doctrine generally applies.

Moving to whether the scope of any waiver, Plaintiffs' portrayal of the case in their attempt to collect core work product differs slightly from the actual facts. Defendants have not put Weil's opinions and legal analysis at issue. As explained by the Court in its June 11, 2020, Order, "Though any material which merely relays FTC-sourced information should not be privileged, these pleadings show that Defendants have placed at issue what they knew about the FTC review process." (Doc. 135, at 14). Though relayed through Weil, it is FTC-sourced information that is at issue, not Weil's opinions and legal analysis.

Unlike in *Novartis* and *Mosel Vitelic*, the Defendants are not contending, as a defense, that they relied only on Weil's legal assessments or opinions. *See Novartis Pharm. Corp.*, 206 F.R.D. 396 (D. Del. 2002) ("As a defense to Novartis' charge of willful infringement, Eon relies on a written opinion it received in March 2000 from its patent counsel, Thomas Pontani, Esquire, concluding that it is 'unlikely' that Eon is infringing the '382 Patent."); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307 (D. Del. 2000) (involving opinion letters drafted by counsel concerning whether the client's products infringed existing patents). Unlike in *Harding*, the Defendants are not defending their position by relying on the quality of an investigation conducted by Weil. *See Harding*, 914 F.Supp. at 1099 ("Dana attempts to defend employer liability under Title VII based in part upon its investigation of the plaintiffs' claims," and that investigation was conducted by Dana's attorney). Plaintiffs begin the waiver section of their brief with the statement, "[A] consistent line of cases has developed an exception to the work-product privilege where the party raises an issue which depends upon an evaluation of the legal theories, opinions and conclusions of counsel." (Doc. 166, at 29) (quoting *Coleco*

10

*Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688 (S.D.N.Y. 1986)). Defendants do not raise such an issue; they are not defending this action based on a claim of reliance on Weil's legal theories and opinions. At issue are Defendants' statements as they relate to information gathered from *the FTC* – and what was communicated to Defendants *through* Weil.[3] (*See* Doc. 135, at 14). As such, the scope of any waiver must be determined with this important difference in mind.

Upon surveying the relevant case law on this issue, the Court joins others within the Third Circuit in finding persuasive *EchoStar*'s holding that in situations like this the work product doctrine should be waived as to material which was communicated to the Defendants as well as material which references a communication involving the Defendants. *See Elcommerce.com, Inc. v. SAP AG*, 2010 WL 3421101 (E.D. Pa. 2010); *Graham Company v. Griffing*, 2010 WL 11707354, at *1 (E.D. Pa. 2010). In *Echostar*, the Federal Circuit, quoting the district court's decision, noted the position of multiple courts, including *Novartis*, that when counsel's advice is put at issue, work product should be disclosed, whether or not communicated to the client, "maintaining that the discovery of such information is necessary to uncover what the client was actually told by opinion counsel." *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006). Directing courts to "balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product," the court separates work product into three categories:

> (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3)

---

[3] Defendants contend that "their statements genuinely reflected the information they possessed, and they disclosed FTC developments in real time." (Doc. 49, at 6).

documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.

*EchoStar*, 448 F.3d at 1302.

Here, the first category has already been produced. (Doc. 158-1, at 21). Plaintiffs assert that Defendants have waived the work product doctrine as to the second and third categories as well. (Doc. 166, at 28-34).

Though the documents which fall under the second category – opinion or core work product not provided to the client – would undoubtedly be relevant to the case and could further illuminate what information was communicated to Defendants, the policy to protect work product outweighs the potential sword-and-shield litigation tactics. *EchoStar*, 448 F.3d at 1302. Opinion work product "deserves the highest protection from disclosure" and "if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in determining whether the accused knew it was infringing…" *EchoStar*, 448 F.3d at 1303-04. As discussed *supra*, "discouraging lawyers from engaging in the writing, note-taking, and communications so critical to effective legal thinking would, in *Hickman's* words, 'demoraliz[e]' the legal profession, and 'the interests of the clients and the cause of justice would be poorly served.'" *Sealed Case*, 146 F.3d at 886-87. The consequences of venturing too far into waiver of the work product doctrine are great. An evaluation of the Defendants' assertion that their statements reflected what they knew about the FTC review process can be fairly performed without an inquiry into Weil's legal opinions and mental impressions. As such, Defendants have not waived work product protection over "documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client." *See EchoStar*, 448 F.3d at 1302-04.

The third category outlined by the court in *EchoStar* has been waived. By claiming that their statements reflected their genuine beliefs regarding the FTC review process, Defendants opened the door to production of all materials which *reference* communications between Defendants and conveyors of FTC review information. These documents "will aid the parties in determining what communications were made to the client and protect against intentional or unintentional withholding of attorney-client communications from the court." *See EchoStar*, 448 F.3d at 1304. Since Weil was a primary conduit between the FTC and Defendants, Plaintiffs are entitled to Weil's internal documents referencing such communications. Documents which do not embody a communication between Weil and Defendants but which memorialize what was communicated, whether orally or in writing, are probative and essential to understanding Defendants' genuine understanding. In addition, material which does not reference the substance of what was communicated but which evinces that a communication *took place* is discoverable. Such information can assist in putting together a timeline of what was communicated and when. *EchoStar*, 448 F.3d at 1304.

For the foregoing reasons, work product is waived as to any material embodying a communication between Weil and Defendants, or which reference a communication between Weil and Defendants.[4] Legal analysis and mental impressions within such material that was not communicated to Defendants can be redacted.[5] *See EchoStar*, 448 F.3d at 1304.

---

[4] Examples of this are internal emails or office memos describing the substance of a phone conversation between Weil attorneys and Defendants, or that a phone conversation took place.

[5] Defendants assert work product protection here, therefore Plaintiffs' assertion that *Glenmede* compels production of Weil's entire file on the FTC review is frankly not true. (Doc. 166, at 26); *see Glenmede*, 56 F.3d at 486 n.17 ("We note that Glenmede and Pepper Hamilton base their argument for our finding a limited waiver of the attorney-client privilege exclusively

13

C.   THE BURDEN OF PRODUCTION

Weil argues that it would be unduly burdensome for them to produce the requested material.[6] (Doc. 158-1, at 24). Weil estimates that approximately 60,000 emails alone would need to be reviewed for this request. (Doc. 158-1, at 24). The resources and time needed to determine the applicability of privilege to these documents would impose "a massive burden on non-party Weil." (Doc. 158-1, at 25). The privilege log alone "would take a team of numerous attorneys at least one to two months to complete." (Doc. 158-1, at 25). According to Weil, compliance with the Subpoena would overburden them with expense, resources, and time and would be futile. (Doc. 158-1, at 25-26).

Plaintiffs assert that Weil has not established the potential burden with sufficient specificity. (Doc. 166, at 44). With no "hit reports or other functional information to assess whether Weil's numbers are a reasonable estimation of likely responsive documents," the burden is "speculative and self-manufactured." (Doc. 166, at 44). Plaintiffs also aver that Defendants made the choice to use Weil's materials as their defense and so they brought this burden unto themselves. (Doc. 166, at 44).

As an initial matter, Plaintiffs' lack of specific evidence to dispute Weil's affidavit of assertions regarding the burden is not fatal. (Doc. 175, at 35). In the case used by Weil as support, the party *which bore the burden* of establishing venue failed to submit evidence in

---

on the confines of the attorney-client privilege; they do not rely on the separate attorney work product doctrine to prevent the disclosure of Pepper Hamilton's internal file documents.").

[6] The relevance of such material has been established, therefore Weil's assertion that "where there is no need for a subpoena to begin with, '*everything* done in response to it constitutes an "undue burden or expense" within the meaning of Rule 45(d)(1)'" is inapplicable. (Doc. 158-1, at 24) (internal citation omitted).

opposition to the averments in an affidavit showing that venue was not proper. *Liqui-Box Corp. v. Reid Valve Co., Inc.*, 672 F. Supp. 198, 199 (W.D. Pa. 1987). Here, Weil bears the burden of quashing the subpoena. *See Schaefer*, 331 F.R.D. at 607-08). Furthermore, the evidence in the affidavit is preliminary and does not account for any narrowing of the subpoena as a result of this Order. As such, Plaintiffs' lack of responsive evidence does not preclude their request.

The factors to consider in determining whether a subpoena imposes an undue burden are: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *In re Domestic Drywall Antitrust Litigation*, 300 F.R.D. 234, 252 (E.D. Pa. 2014) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). The relevance of the request has already been discussed *supra* so will not be revisited here. Documents which disclose what was communicated to Defendants, and when, are extremely probative of their defense. Furthermore, there is a high probability that certain communications were not embodied in writing, only orally, and so this subpoena would serve to bring the truth to light. The breadth of the request is undoubtedly large, however it, as well as the time period, is restricted to the Proposed Transaction. This differs from, for example, a subpoena issued for communications from a time period that may or may not bear relevance to the conduct at issue. The particularity of the request is also broad, however it corresponds to the Defendants' broad defense that their statements reflected their honest belief of the FTC review of the Proposed Transactions. Though the burden the Subpoena creates may be large, it is not undue. It will allow Plaintiffs to collect information directly probative of Defendants'

defense. As such, of the material for which the work product doctrine has been waived, the Subpoena will not be quashed on grounds of undue burden.

### D.   THE TESTIMONIAL USE OF EVIDENCE

Plaintiffs submit that if the Court were to grant any aspect of the Motion to Quash, that a corresponding restriction should be issued on Weil's testimony and documents offered at summary judgment and at trial. (Doc. 166, at 39). By not issuing such a restriction, the court would deprive Plaintiffs of the opportunity to "evaluate and meet the evidence." (Doc. 166, at 39) (quoting PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 9:37 (2020)). Weil states the Court's limited privilege waiver already in existence would dictate its testimony. (Doc. 175, at 27). According to Weil, there is no justification in federal civil procedure for this request. (Doc. 175, at 27-28).

*Nobles* is the preeminent case on this issue. In *Nobles*, the Supreme Court of the United States explained that the work-product doctrine normally protects from disclosure an attorney's internal materials used to present the client's case, however "where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents." *Nobles*, 422 U.S. at 239 n.14. Content protected by the work product doctrine is not admissible at trial, for it is not discoverable beforehand. *See Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408, 416 (D. Del. 1992).

As such, at this time Weil's testimony and documents offered at summary judgment and at trial shall be limited. Plaintiffs are unable to discover internal documents possessed by Weil which do not embody or reference a communication between Weil and Defendants. Therefore, Weil's testimonial evidence, too, is limited to its attorneys' communications with

Defendants. Weil attorneys are precluded from testifying to their opinions on the FTC review, or what information was provided to them from the FTC. They may only testify to what they communicated to Defendants. Unless they waive the work product privilege for legal opinion and conclusions, they may not testify to their subjective reasoning for what they communicated.

     E.   T<small>IMING</small>

     Lastly, Weil asserts that the Motion should be quashed as untimely. "Plaintiffs waited to launch this Subpoena until after the parties had effectively completed an extensive 18-month document discovery process and depositions were set to commence." (Doc. 158-1, at 22). The Subpoena, according to Weil, would "upend the case schedule." (Doc. 158-1, at 22). Plaintiffs respond that the Subpoena was issued before the discovery deadline, so is timely. (Doc. 166, at 41).

     A subpoena is subject to the same scheduling order deadlines as other forms of discovery. *Behne v. Halstead*, 2014 WL 4672486, at *2 (M.D. Pa. 2014). Generally, a subpoena that is issued prior to the discovery deadline is considered timely. *See Mealy v. Ryan Environmental, Inc.*, 2010 WL 3906145, at *4 (W.D. Pa. 2010) (rejecting an argument that a subpoena was untimely when it was issued less than two months prior to the discovery deadline). There is no reason to depart from this general rule here. The discovery deadline in this matter is March 12, 2021. (Doc. 145). Weil's Motion to Quash on grounds of timeliness is denied.

**III.**   C<small>ONCLUSION</small>

     For the foregoing reasons, the Court **GRANTS** Weil's Motion with regards to Request No. 6 in the Subpoena – communications with the FTC concerning Michael Moiseyev.

Furthermore, the Court **GRANTS** Weil's Motion insofar as it need not produce documents which do not embody or reference or describe written or oral communications between Weil attorneys and Defendants. Weil's Motion is **DENIED** in all other respects. Accordingly, any testimony elicited by Weil is limited to the content of written or oral communications between Weil and Defendants. The Clerk of Court is directed to close case number 3:20-mc-00669.

An appropriate Order follows.

Dated: February 25, 2021                                    *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **United States Magistrate Judge**

18