UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS S. CHABOT, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) Civ. Action No. 1:18-cv-02118-JPW ) ) CLASS ACTION |
| Plaintiffs, | ) ) MEMORANDUM OF LAW IN ) SUPPORT OF UNOPPOSED MOTION |
| vs. | ) FOR PRELIMINARY APPROVAL OF ) CLASS ACTION SETTLEMENT |
| WALGREENS BOOTS ALLIANCE, INC., et al., | ) ) ) |
| Defendants. | ) ) |

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ....................................................................1

II.     STATEMENT OF FACTS AND ABBREVIATED PROCEDURAL
        HISTORY OF THE ACTION....................................................................3

III.    FRAMEWORK FOR CLASS ACTION SETTLEMENTS...........................6

IV.     STATEMENT OF QUESTIONS INVOLVED .............................................7

V.      THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............8

        A.      Whether Lead Plaintiffs and Plaintiffs' Counsel Have
                Adequately Represented the Class ........................................................8

        B.      Whether the Settlement Was the Result of Good Faith, Arm's-
                Length Negotiations ..........................................................................10

        C.      Whether the Relief Provided to the Class Is Adequate.......................12

        D.      Whether the Settlement Treats Class Members Equitably
                Relative to Each Other ........................................................................14

        E.      The Other Rule 23(e)(2)(C) Factors Are Met ....................................15

                1.      The Proposed Method for Distributing Relief Is Effective ......15

                2.      Attorneys' Fees and Expenses .................................................16

                3.      The Parties Have No Other Agreements Besides an
                        Agreement to Address Possible Requests for Exclusion..........17

VI.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND
        DUE PROCESS REQUIREMENTS AND SHOULD BE
        APPROVED ................................................................................18

VII.    PROPOSED SCHEDULE OF EVENTS ....................................................20

VIII.   CONCLUSION..........................................................................21

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...................................................................6

*Girsh v. Jepson*
  521 F.2d 153 (3d Cir. 1975) ...................................................8, 12, 14

*Hering v. Walgreens Boots All., Inc.*,
  341 F. Supp. 3d 412 (M.D. Pa. 2018)....................................................4

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................17

*In re Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ..........................................13

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .................................................................17

*In re Viropharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016).....................................10, 11

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...................................................................6

*Pelletier v. Endo Int'l PLC*,
  2022 WL 888813 (E.D. Pa. Mar. 25, 2022) ........................................10

*Schuler v. Medicines Co.*,
  2016 WL 3457218 (D.N.J. June 24, 2016)............................................17

*Silverman v. Motorola Solutions, Inc.*,
  739 F.3d 956 (7th Cir. 2013) ..................................................................9

*Southeastern Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  2023 WL 1454371 (M.D. Pa. Feb. 1, 2023)................................*passim*

4859-3326-2977.v1

**Page**

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
  2020 WL 5211035 (E.D. Pa. Sept. 1, 2020) ......................................................18

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(7) ...................................................................................................20

Federal Rule of Civil Procedure
  Rule 23 ...................................................................................................7, 18, 20
  Rule 23(c)(2)(B) ......................................................................................18, 20
  Rule 23(e) ....................................................................................................6, 7
  Rule 23(e)(1) ...................................................................................................20
  Rule 23(e)(1)(B) .........................................................................................7, 18
  Rule 23(e)(2) ...............................................................................................7, 8
  Rule 23(e)(2)(A) .................................................................................................8
  Rule 23(e)(2)(B) ...............................................................................................10
  Rule 23(e)(2)(C) ...............................................................................................15
  Rule 23(e)(2)(C)(i) ............................................................................................12
  Rule 23(e)(2)(C)(ii) ...........................................................................................15
  Rule 23(e)(2)(C)(iii) ..........................................................................................16
  Rule 23(e)(2)(C)(iv) ..........................................................................................17
  Rule 23(e)(2)(C)(ii)-(iv) .....................................................................................15
  Rule 23(e)(2)(D) .........................................................................................14, 15
  Rule 23(e)(3) .....................................................................................................8

## SECONDARY AUTHORITIES

*Manual for Complex Litigation*,
  §21.63 (4th ed. 2004) .........................................................................................6

Lead Plaintiffs and Class Representatives Douglas S. Chabot and Corey M. Dayton ("Lead Plaintiffs" or "Plaintiffs") respectfully submit this Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

## I.     PRELIMINARY STATEMENT

After nearly eight years of extensive, hard-fought litigation, Lead Plaintiffs are pleased to report that the parties have reached a settlement involving a cash payment of $192.5 million from Defendants Walgreens Boots Alliance, Inc. ("Walgreens"), Stefano Pessina, and George R. Fairweather for the benefit of a Class of investors in Rite Aid Corporation ("Rite Aid") common stock.

Absent a settlement, this certified class action was approaching a three-week jury trial set to commence on January 29, 2024.  The Settlement was the result of arm's-length mediation and settlement discussions recently overseen by the Honorable Layn R. Phillips (Ret.), a highly respected and experienced mediator and retired federal district court judge.  This is an outstanding recovery for the Class.  It is the largest securities class action recovery ever achieved in this District and it is the second largest such recovery ever achieved in any Pennsylvania federal court.

---

[1]   Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation") attached as Exhibit 1 to the Declaration of David A. Knotts in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Knotts Decl.").  All citations and footnotes are omitted and all emphasis is added, unless otherwise indicated.

As this Court recently explained in *Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services, Inc.*, 2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) ("*SEPTA*"), the "decision to preliminarily approve a proposed class action settlement 'is not a commitment [to] approve the final settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason."'" *Id.* at *5 (quoting multiple cases). As discussed herein, the proposed Settlement was negotiated at arm's length and is in every respect fair, adequate, reasonable, and in the best interests of the Class.

At this advanced stage of litigation, the Settling Parties were certainly well informed of the strengths and weaknesses of their claims and defenses as they negotiated the Settlement. The parties and non-parties produced nearly one-million pages of documents, and the parties took a combined thirty-one depositions. The Settling Parties had the benefit of multiple detailed rulings from this Court, including the Court's extensive analysis of Lead Plaintiffs' claims in two motion to dismiss rulings and a fifty-five page ruling on the parties' motions for summary judgment. In short, this certified class action has been vigorously litigated for years by Lead Plaintiffs against a group of very well-capitalized Defendants, represented by an experienced securities defense firm.

Notably, under the Stipulation, Class Members who properly submit timely and valid Claim Forms will be treated equitably because each will receive a *pro rata* share

- 2 -

of the monetary relief based on the terms set forth in the Plan of Allocation in the Notice.  Importantly, this is also not a claims-made settlement.  If the Settlement is ultimately approved and becomes effective, Defendants will have no reversionary interest in the $192.5 million Settlement Fund under any circumstance.

Upon finding that a proposed settlement is preliminarily acceptable, the Court would direct that prompt notice be distributed to Class Members, providing them an opportunity to be heard and potentially object to the Settlement at a final approval hearing, to be scheduled by the Court.  *SEPTA*, 2023 WL 1454371, at *4. Accordingly, Lead Plaintiffs and Plaintiffs' Counsel request that the Court enter the proposed Preliminary Approval Order so that notice may be promptly disseminated to the Class and a Settlement Hearing and other Settlement-related dates may be scheduled.

## II.   STATEMENT OF FACTS AND ABBREVIATED PROCEDURAL HISTORY OF THE ACTION

This is a securities class action on behalf of all persons and entities who purchased or otherwise acquired Rite Aid common stock from October 20, 2016 to June 28, 2017.  At issue are allegedly misleading statements and omissions made by Walgreens and certain of its executives regarding the status of the FTC review of a then-pending merger between Rite Aid and Walgreens (the "Merger").

As the Court noted in its ruling on the motions for summary judgment, "[t]he instant lawsuit has its origins in *Hering v. Rite Aid Corporation*, No. 1:15-CV-2440

- 3 -

(M.D. Pa.), a putative securities class action brought by a Rite Aid shareholder after cancellation of the merger." ECF 286 at 25. Lead Counsel filed the *Hering* case in 2015 and the Court ultimately denied Defendants' motion to dismiss (but granted Rite Aid's motion to dismiss) on October 24, 2018. *See Hering v. Walgreens Boots All., Inc.*, 341 F. Supp. 3d 412 (M.D. Pa. 2018).

On November 2, 2018, "Plaintiffs filed the present class action lawsuit based in the main on statements Judge Jones found actionable in *Hering*." ECF 286 at 25. On November 16, 2018, the Court granted Lead Plaintiffs' Motion for Appointment as Substitute Lead Plaintiffs. ECF 16. Defendants filed another motion to dismiss, which the Court denied after full briefing. ECF 50.

The Court granted Lead Plaintiffs' motion for class certification on January 21, 2020. ECF 121. The Court also appointed Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel. *Id.* The Court then approved a form and manner of class notice, involving a widely publicized and extensive distribution where potential Class Members were notified of the litigation and the right to exclude themselves from the litigation. ECF 157.

From May 23, 2019 to November 20, 2020, Plaintiffs served subpoenas on eight third parties, nearly all of which produced documents and a witness for deposition. The discovery process also involved five contested rulings from this Court on a variety of discovery issues and disputes (all of which involved briefing and

- 4 -

hearings), the most significant of which involved a finding that Walgreens waived its attorney-client privilege and a ruling that "Defendants shall produce and un-redact all documents containing information or analysis regarding the status of the FTC review process." ECF 135 at 15.

Ultimately, Defendants produced 785,768 pages of documents and third parties produced over 183,997 pages of documents, all of which Plaintiffs' Counsel reviewed and analyzed in preparation for depositions, summary judgment, and potentially trial. Following fact and expert discovery, which included thirty-one depositions of fact and expert witnesses, the parties filed summary judgment-related briefing from January 24, 2022 through May 2, 2022. ECF 222-282. On March 31, 2023, in a well-reasoned and comprehensive ruling, the Court denied both motions for summary judgment. ECF 286. The Court then set this matter for trial commencing on January 29, 2024. ECF 292. The parties continued to submit briefs regarding the procedure and conduct of trial. ECF 296, 301.

On July 27, 2023, the parties participated in a full-day mediation in front of the Hon. Layn R. Phillips (Ret.). The parties did not reach a resolution that day, but discussions with the assistance of Judge Phillips' office continued. Following over three additional weeks of robust arm's-length negotiations, the parties, on August 20, 2023, accepted a "Mediator's Recommendation" from Judge Phillips. On August 23, 2023, the parties signed a Settlement Term Sheet documenting the $192.5 million

settlement.    Extensive  negotiations  between  the  Settling  Parties  continued,
culminating in the Stipulation, executed on October 18, 2023, attached as Exhibit 1 to
the Knotts Decl.

## III.   FRAMEWORK FOR CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for
any compromise of claims brought on a class basis.  Fed. R. Civ. P. 23(e).  It is well
established in this Circuit that the settlement of class action litigation is both favored
and encouraged.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir.
2010) ("This presumption is especially strong in 'class actions and other complex
cases  where  substantial  judicial  resources  can  be  conserved  by  avoiding  formal
litigation.'"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)
("there is an overriding public interest in settling class action litigation, and it should
therefore be encouraged").

The *Manual for Complex Litigation* describes a three-step process for approving
a  class  action  settlement:  (1)  preliminary  approval  of  the  proposed  settlement;
(2) dissemination of notice of the settlement to class members; and (3) a final approval
hearing.  *See Manual for Complex Litigation*, §21.63 (4th ed. 2004); *see also SEPTA*,
2023 WL 1454371, at *4 (same).  "At the first stage, the parties submit the proposed
settlement  to  the  court,  which  must  make  'a  preliminary  fairness  evaluation.'"
*SEPTA*, 2023 WL 1454371, at *4.  At this juncture, Lead Plaintiffs request that the

- 6 -

Court take the first and second steps in the settlement approval process by entering the proposed Preliminary Approval Order and ordering the dissemination of notice to the Class. Preliminary approval can be granted without a hearing to allow for prompt notice of a proposed settlement. *Id.* at *4 n.7.

## IV.    STATEMENT OF QUESTIONS INVOLVED

Pursuant to Rule 23(e), the question at issue at preliminary approval is whether the Court "will likely be able to: . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B).[2] Rule 23(e)(2) includes the following factors:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

---

[2]   "[I]f 'the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23.'" *SEPTA*, 2023 WL 1454371, at *5. Unlike *SEPTA*, the Court here already certified this Class long before the Settlement, so the Court need not analyze the certification of a further settlement class. ECF 121.

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also SEPTA*, 2023 WL 1454371, at *5.

These factors overlap with those set forth by the Third Circuit in *Girsh v. Jepson*:

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

521 F.2d 153, 157 (3d Cir. 1975) (cleaned up); *see also SEPTA*, 2023 WL 1454371, at *5 (applying *Girsh* factors, noting the overlap with Rule 23(e)(2)).

## V.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Whether Lead Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class

The Court in *SEPTA* first analyzed whether the plaintiff and its counsel adequately represented the class, noting that Rule 23(e)(2)(A) overlaps with the third *Girsh* factor.  2023 WL 1454371, at *9 n.10.

Here, Lead Plaintiffs and Plaintiffs' Counsel have litigated this case from inauspicious beginnings to achieve the largest securities settlement in this District, and

- 8 -

the second largest in any Pennsylvania federal court.  Indeed, at its inception, no other plaintiffs' firm even filed a related case (until two opt-out plaintiffs filed individual cases once Lead Plaintiffs advanced past a motion to dismiss).  As another court aptly noted in an analogous situation, "[w]hen this suit got under way, no other law firm was willing to serve as lead counsel.  Lack of competition . . . suggests that most members of the securities bar saw this litigation as too risky for their practices." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

Over the past eight years of litigation, Lead Plaintiffs and Plaintiffs' Counsel prevailed on two separate motions to dismiss, a motion for class certification, and multiple discovery motions; obtained and reviewed nearly one million pages of documents; took and/or defended thirty-one depositions; engaged in complex expert discovery involving five experts, twelve expert reports, and six expert depositions; defeated Defendants' voluminous, aggressive, and potentially dispositive 72-page motion for summary judgment (and Defendants' corresponding separate statement of 228 purportedly undisputed facts); and were in the midst of trial preparation, including drafting numerous motions *in limine*.

Lead Counsel, Robbins Geller, is highly experienced in prosecuting complex securities class actions in this Circuit and throughout the country, as courts in this Circuit have recognized.  *See, e.g.*, *Pelletier v. Endo Int'l PLC*, 2022 WL 888813, at *3 (E.D. Pa. Mar. 25, 2022) (finding that Robbins Geller and Saxton & Stump LLC

"worked vigorously and successfully in bringing this case to a close for the benefit of the class, in a very short period of time" and that "quality and performance of results will be handsomely rewarded"); *see also* Knotts Decl., Exs. 2, 3 (firm resumes of Robbins Geller and Saxton & Stump, respectively).  The collective tenacity of Lead Plaintiffs and Plaintiffs' Counsel resulted in a very favorable Settlement, providing a substantial financial benefit to the Class.

As in *SEPTA*, "[e]ven the most cursory review of the docket in this matter reflects the vigorous advocacy and evident competence of Plaintiff[s] as representative[s] of the Settlement Class and [their] counsel.  Accordingly, this factor weighs strongly in favor of approval of the Stipulation."  *SEPTA*, 2023 WL 1454371, at *9.

### B. Whether the Settlement Was the Result of Good Faith, Arm's-Length Negotiations

The Court in *SEPTA* next considered whether the settlement was the result of good faith, arm's-length negotiations under Rule 23(e)(2)(B).  *Id.* at *10.

"'[T]he participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties.'"  *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (cleaned up).  Indeed, in *Viropharma*, the court found a presumption of fairness where "the parties negotiated the Settlement at arm's-length, with the assistance of an experienced mediator, Judge Phillips."  *Id.*

- 10 -

Here too, the parties engaged in extensive arm's-length settlement negotiations with Judge Phillips, a well-known and respected former federal judge and mediator of securities class actions. This included a lengthy in-person, full-day mediation session on July 27, 2023, in New York, NY. Each side prepared two rounds of mediation briefs in advance. Although an agreement was not reached on that day, arm's-length discussions through Judge Phillips and his office continued over the next month.

Ultimately, each side received an unsolicited, double-blind "mediator's proposal" to settle the case on terms proposed by Judge Phillips. Each side accepted the "mediator's proposal" and then negotiated a term sheet, which the parties executed on August 23, 2023. The parties then proceeded to negotiate the precise details and terms of the Settlement, which are reflected in the Stipulation.

In sum, these negotiations were held with each side having full knowledge of all issues in the case and the benefit of full fact and expert discovery, a detailed motion for summary judgment ruling, and trial preparation. Settlement negotiations were difficult, adversarial, and vigorously executed by both sides. Defendants are represented by sophisticated counsel at Weil, Gotschal & Manges LLP ("Weil"), an experienced corporate defense firm.

As in *SEPTA*, "[t]he above sequence of events demonstrates that the settlement reached between the parties resulted from an extensive good faith, arm's length negotiation conducted with the assistance of a mediator experienced in mediating

- 11 -

complex litigation, specifically lawsuits involving securities claims. . . . [A]ccordingly, this factor weighs in favor of approval." *SEPTA*, 2023 WL 1454371, at *10.

### C.    Whether the Relief Provided to the Class Is Adequate

The Court in *SEPTA* also analyzed whether the relief provided to the class was adequate under Rule 23(e)(2)(C)(i), as well as *Girsh* factors 1, 4-6, and 8-9, which instruct the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal could inevitably impose. *Id.* at *10-*11, n.12; *Girsh*, 521 F.2d at 157.[3]  These factors weigh in favor of approval of the Settlement here.  As this Court put it:

> Absent this settlement, the case is likely to continue to be litigated for several years and cost hundreds of thousands of dollars to prosecute. In addition, there is no guarantee of success on Plaintiff's claims, as Defendants have proffered numerous affirmative defenses to Plaintiff's claims. As noted by Plaintiff, this Settlement avoids those risks while at the same time providing a substantial recovery for the Settlement Class.

*SEPTA*, 2023 WL 1454371, at *10-*11.

As noted, the $192.5 million Settlement in this case is an outstanding, record-breaking result for the Class.  Lead Plaintiffs and Plaintiffs' Counsel achieved this result, even though, as courts routinely observe, "[s]ecurities fraud class actions are

---

[3]   The second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Class Members have been given notice of the Settlement and have had an opportunity to be heard.

4859-3326-2977.v1

notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).

"With regard to the costs and risks of trial and appeal, the Court notes that the substantial benefit of the $[192.5] million recovery must be weighed against the risks posed by continued litigation." *SEPTA*, 2023 WL 1454371, at *11.  To prevail at trial, Lead Plaintiffs would have to prove falsity, materiality, scienter, loss causation, and damages.   While Lead Plaintiffs and Plaintiffs' Counsel strongly believe in the strength of their claims, Defendants have aggressively disputed each of these issues. For example, Defendants have maintained that their statements with respect to the FTC review of the Merger were not false or misleading, but were actually true.  ECF 228 at 50.  As Defendants argued, "to hold a company liable for statements of opinion its executives genuinely believed and accurately conveyed is extraordinarily difficult." *Id.* at 3.  While Lead Plaintiffs dispute all of Defendants' arguments, they were put forth by very well-capitalized Defendants represented by an experienced securities litigation defense firm.

The risks are further enhanced because, "[a]t trial, Plaintiff[s] would have to rely extensively on expert witnesses on issues of accounting, loss causation, and damages." *SEPTA*, 2023 WL 1454371, at *11.  Here, Defendants vociferously argued that Lead Plaintiffs cannot establish loss causation and damages and that the Class was not harmed at all.  *See* ECF 228 at 67-72.  Proving loss causation and damages is

- 13 -

plaintiffs' burden, and jury trials are always unpredictable, especially on complex issues like these.

Taking into account that the Action and its related predecessor have been comprehensively litigated for eight years, the risks and uncertainties of continued litigation, and the significant amount of the recovery, the record-breaking $192.5 million proposed recovery is certainly adequate. *See Girsh*, 521 F.2d at 157.

### D.    Whether the Settlement Treats Class Members Equitably Relative to Each Other

"Rule 23(e)(2)(D) asks courts to determine whether a settlement treats class members equitably relative to one another." *SEPTA*, 2023 WL 1454371, at *12. Just as in *SEPTA*, the proposed Plan of Allocation is fair, reasonable, and adequate because it treats all Class Members equitably and does not treat Plaintiffs or any other Class Member preferentially.

As set forth in the Plan of Allocation contained in the Notice, attached to the Stipulation as Exhibit A-1, Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based on their recognized claim compared to the total recognized claims of all Authorized Claimants.   The Plan of Allocation is substantially similar to other plans approved in securities class actions across the country, including this Court in *SEPTA*.  *Id.* ("[T]he Net Settlement Fund will be allocated to Class Members on a *pro rata* basis determined by the relative size of their

- 14 -

loss. The Court finds that this Plan of Allocation treats Class Members equitably relative to each other, as required by Rule 23(e)(2)(D).").

### E.  The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also lists three additional factors that a court considers in approving a settlement: (1) the effectiveness of the proposed method for distributing relief; (2) the terms of the proposed attorneys' fees; and (3) the existence of any other "agreement[s]."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); *see also SEPTA*, 2023 WL 1454371, at *11.  These factors are readily met here.

#### 1.  The Proposed Method for Distributing Relief Is Effective

Under Rule 23(e)(2)(C)(ii), the method and effectiveness of the claims administration process is more than sufficient.  The claims process includes a standard claim form which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Plaintiffs' damages expert and is based on his event study analysis estimating the amount of artificial inflation in the price of Rite Aid common stock during the Class Period.

As in *SEPTA*, "the Plan of Allocation takes into consideration the dates on which the public disclosure of relevant information occurred and the market's reaction

- 15 -

to that information as reflected in the trading price of Orrstown [here, Rite Aid] common stock." *SEPTA*, 2023 WL 1454371, at *11 ("Upon consideration of the above, the Court concludes that the proposed Plan of Allocation and process for the submission of claims by Class Members is consistent with standard practice in securities class actions.").

### 2. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Court's "role at this preliminary stage is not to approve those amounts but rather to simply determine that the proposal is reasonable for purposes of providing Notice to Class Members and scheduling a final fairness hearing." *SEPTA*, 2023 WL 1454371, at *11.

As set forth in the proposed Notice, Plaintiffs' Counsel will request attorneys' fees not to exceed 30% of the Settlement Amount and litigation expenses and charges not to exceed $1.9 million, plus interest earned on these amounts at the same rate as earned by the Settlement Fund.

This fee request is supported by ample precedent from this Court and the Third Circuit. Most recently, in *SEPTA*, the Court awarded fees of 35% to class counsel in a securities case, finding that number was "within the range typically awarded in similar cases in this Circuit." *Id.* (citing multiple cases); *SEPTA v. Orrstown Fin. Servs., Inc.*, No. 1:12-CV-00993-YK, ECF 309 at 2-3 (M.D. Pa. May 19, 2023) (final approval

- 16 -

order).  *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005), as amended (Feb. 25, 2005) (citing with approval a "study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were 'fairly standard'"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (awarding attorneys' fees of 30% on $111 million recovery in a securities class action); *Schuler v. Medicines Co.*, 2016 WL 3457218, at *10 (D.N.J. June 24, 2016) (awarding attorneys' fees of 33% in a securities class action, "'[t]he Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees'").

### 3. The Parties Have No Other Agreements Besides an Agreement to Address Possible Requests for Exclusion

Regarding Rule 23(e)(2)(C)(iv), the Settling Parties have entered into a supplemental agreement which provides that if the Court finds that Class Members have an additional right to request exclusion, Defendants will have the right to terminate the Settlement in the event that valid requests for exclusion from the Class exceed the criteria set forth in the Supplemental Agreement.  *See* Stipulation, ¶ 8.6; *see also SEPTA*, 2023 WL 1454371, at *12 n.13.[4]

---

[4]   The Court-approved Notice of Pendency of Class Action informed Class Members that they "will not have another opportunity to exclude themselves or otherwise opt out of this Litigation."   *See* ECF 155-1 at 8 (notice of pendency); 157 (order

**VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23
AND DUE PROCESS REQUIREMENTS AND SHOULD BE
APPROVED**

Under Rule 23, the Court "must direct notice in a reasonable manner to all class

members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23

requires the Court to "direct to class members the best notice that is practicable under

the circumstances, including individual notice to all members who can be identified

through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settling Parties have negotiated the form of the notices to be

disseminated to all Persons who fall within the Class definition and whose names and

addresses can be identified with reasonable effort.   The proposed Notice and

Summary Notice are attached to the proposed Preliminary Approval Order as Exhibits

A-1 and A-3, respectively.  The proposed Notice apprises Class Members of (among

other disclosures) the nature of the Action, the definition of the Class, the claims and

issues in the Action, and the claims that will be released in the Settlement.  The Notice

also: (i) advises that a Class Member may enter an appearance through counsel if

desired; (ii) describes the binding effect of a judgment on Class Members; (iii) states

the procedures and deadline for Class Members to object to the proposed Settlement,

---

approving and directing notice).  When a class has been certified and class members
have already been given the opportunity to exclude themselves from the class, "'[d]ue
process does not require a second opt-out period.'"  *Winn-Dixie Stores, Inc. v. E.
Mushroom Mktg. Coop.*, 2020 WL 5211035, at *13 (E.D. Pa. Sept. 1, 2020).

the proposed Plan of Allocation, and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Claim Form to recover from the Settlement; and (v) provides the date, time, and location of the Settlement Hearing. The Settling Parties further propose to supplement the mailed Notice with the Summary Notice, to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. Additionally, the Notice and Claim Form and other relevant documents will be posted on the Settlement website.

The Notice and Summary Notice also satisfy the Private Securities Litigation Reform Act of 1995's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per-share basis; (ii) that the Settling Parties do not agree on the average amount of damages per share that would be recoverable in the event Plaintiffs prevailed at trial, and stating the issue(s) on which the Settling Parties disagree; (iii) that Plaintiffs' Counsel intend to make an application for an award of attorney' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (iv) contact information for Lead Counsel; and (v) the reasons the Settling Parties are proposing the Settlement. The contents of the Notice and Summary Notice therefore satisfy all applicable requirements.

Plaintiffs also request that the Court appoint Gilardi as Claims Administrator to disseminate all notices approved by the Court to Class Members, to process Claim

Forms, and to administer the Settlement.  Gilardi is a recognized leader in legal administration services for class action settlements and legal noticing programs, and has implemented successful claims administration programs in many class actions. *See* https://gilardi.com and https://www.gilardi.com/active-cases.

Thus, the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).  In *SEPTA*, the Court approved a nearly identical notice program.  *SEPTA*, 2023 WL 1454371, at *13-*14 ("the Court is satisfied that its form and substance meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e)(1), as well as the PSLRA and due process").

## VII.  PROPOSED SCHEDULE OF EVENTS

The Settling Parties respectfully propose the following schedule for the Court's consideration, which is also set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for commencing the mailing of the Notice to Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") (*see* ¶6) | No later than 20 calendar days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice (*see* ¶7) | No later than 7 calendar days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses (*see* ¶17) | 35 calendar days prior to the Settlement Hearing |

- 20 -

| Deadline for objections (*see* ¶14) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (*see* ¶17) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting proof of the mailing of the Notice to Class Members and publication of the Summary Notice (*see* ¶8) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (*see* ¶2) | At least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claims Forms (*see* ¶10) | Postmarked no later than 90 calendar days after the Notice Date |

## VIII. CONCLUSION

Lead Plaintiffs and Plaintiffs' Counsel obtained an outstanding Settlement on behalf of the Class. For these reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED: October 18, 2023          Respectfully submitted,

                                 ROBBINS GELLER RUDMAN
                                   & DOWD LLP
                                 RANDALL J. BARON
                                 A. RICK ATWOOD, JR.
                                 DAVID A. KNOTTS
                                 TEO A. DOREMUS

                                 _____
                                 DAVID A. KNOTTS

4859-3326-2977.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

*Lead Counsel for Plaintiffs*

SAXTON & STUMP LLC
LAWRENCE F. STENGEL
CARSON B. MORRIS
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone:  717/556-1000
lfs@saxtonstump.com
cbm@saxtonstump.com

*Local Counsel*

4859-3326-2977.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 18, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Knotts
DAVID A. KNOTTS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  dknotts@rgrdlaw.com

# Mailing Information for a Case 1:18-cv-02118-JPW Chabot et al v. Walgreens Boots Alliance, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **A. Rick Atwood , Jr**
  ricka@rgrdlaw.com,e_file_sd@rgrdlaw.com,tdoremus@rgrdlaw.com

- **Randall J Baron**
  randyb@rgrdlaw.com,jaimem@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas G. Collins**
  thomas.collins@bipc.com,christy.sunchych@bipc.com,theresa.gillis@bipc.com,krista.kiger@bipc.com,eservice@bipc.com

- **Stuart A Davidson**
  sdavidson@rgrdlaw.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Teo Doremus**
  tdoremus@rgrdlaw.com

- **David A Knotts**
  dknotts@rgrdlaw.com,jaimem@rgrdlaw.com,e_file_sd@rgrdlaw.com,tdoremus@rgrdlaw.com,dknotts@ecf.courtdrive.com

- **Sara E. Myirski**
  sara.myirski@bipc.com,christy.sunchych@bipc.com,theresa.gillis@bipc.com,krista.kiger@bipc.com,eservice@bipc.com

- **Mark Andrew Perry**
  mark.perry@weil.com

- **Jonathan D Polkes**
  jonathan.polkes@weil.com,mco.ecf@weil.com,jonathan-polkes-2906@ecf.pacerpro.com,walgreens.associate@weil.com,nymao@ecf.pacerpro.com

- **Lawrence F. Stengel**
  lfs@saxtonstump.com,cag@saxtonstump.com,cbm@saxtonstump.com

- **Caroline Zalka**
  caroline.zalka@weil.com,mco.ecf@weil.com,caroline-zalka-7810@ecf.pacerpro.com,adam.banks@weil.com,nymao@ecf.pacerpro.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Mason Capital Master Fund, L.P.
,

Recovery Master, LLC
,